IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SEMIAL SIGLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 04618 |
| | ) | |
| CITY OF CHICAGO, ROBERT STEGMILLER, KERRY POZULP, S. BRANDON, J. L. LOPEZ, and Other UNIDENTIFIED Chicago Police Officers, | ) ) ) ) ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Semial Sigle filed this civil rights action against Chicago Police Officers Robert Stegmiller, Kerry Pozulp, and Sean Brandon; Sergeant Jose Lopez; other unidentified police officers; and the City of Chicago (the "City"). Sigle alleges that the defendants deprived him of his constitutional rights in violation of 42 U.S.C. § 1983 by falsely arresting him and subjecting him to the use of excessive force in the course of that arrest. The plaintiff also asserts a policy-or-practice claim against the City under *Monell v. N.Y.C. Dep't of Soc. Servs.,* 436 U.S. 658 (1978), alleging that the defendant police officers violated his constitutional rights pursuant to an unwritten City practice or custom, in which the City failed to adequately investigate and sustain allegations of the use of excessive force by its police officers.

Now before the Court are the City's motions for summary judgment and to strike the plaintiff's Local Rule 56.1(b)(3)(c) Statement of Additional Facts. For the reasons set forth below, the City's motions are granted.

I. **BACKGROUND**

This lawsuit stems from Sigle's arrest on July 25, 2009. The plaintiff claims that he was walking down the street when an unmarked squad car stopped near him and three plain-clothed officers emerged, instructing him to "come here." Pl. 56.1 Resp., Dkt. 96 at ¶ 1. The plaintiff ran from the officers but eventually stopped and surrendered. *Id.* At that point, Sigle claims that he went to his knees and put his hands behind his head. *Id.* Despite the fact that the plaintiff surrendered, however, the defendant officers allegedly kicked, stomped, and punched him in the face and body. *Id.* The City does not dispute that force was used during the plaintiff's arrest, but contends that the use of force was reasonable. Def. Mot., Dkt. 80 at 3.

The plaintiff was arrested and charged with unlawful use of a weapon by a felon, possession of a controlled substance, and resisting arrest. *Id.* The plaintiff alleges that the officers did not have probable cause to arrest him and that the officers used excessive force during the course of his arrest. Further, Sigle avers that he did not resist arrest, as the defendants claim, and that the defendant officers planted a gun on him.

Subsequent to the arrest, Sigle filed a complaint with the City's Independent Police Review Authority ("IPRA") against Officer Stegmiller and other officers, who, at the time, were unknown. Pl. 56.1 Resp., Dkt. 96 at ¶ 2. That complaint, however, was not sustained by the IPRA. *Id.* Sigle then filed this action against the defendant officers and City.

During the course of discovery, the City served the plaintiff with contention interrogatories, seeking identification of the specific evidence that Sigle intended to use to support his *Monell* claim. *See* Def. Mot. to Strike, Dkt. 102 at 2; Def. 56.1 Statement of Facts, Dkt. 79, Ex. C. The plaintiff responded to those interrogatories by objecting that they were premature, but also stating that he had no evidence at the time and that his investigation was

ongoing. *See id.* Despite requests to amend by the City, it is undisputed that the plaintiff never amended or supplemented his interrogatory answers before the close of discovery or before the City filed its motion for summary judgment on August 20, 2012. The City now moves for summary judgment only on the *Monell* claim against it, arguing that the plaintiff has failed to present evidence of the City's purported policies or customs that caused the plaintiff's alleged constitutional violations. Def. Mot. at 3.

## II. ANALYSIS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See Jajeh v. Cnty. of Cook*, 678 F.3d 560, 566 (7th Cir. 2012) (citing Fed. R. Civ. P. 56(a)). In addressing the City's motion, the Court must construe all facts and draw all reasonable inferences in the plaintiff's favor. *Id*. If the moving party demonstrates the absence of a disputed issue of material fact, then "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Moreover, Rule 56 "mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Scott v. Trump Ind., Inc.,* 337 F.3d 939, 945 (7th Cir. 2003) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

To establish *Monell* liability, the plaintiff must show "the existence of an 'official policy' or other governmental custom that not only causes but is the 'moving force' behind the deprivation of constitutional rights." *Teesdale v. City of Chi.*, 690 F.3d 829, 833 (7th Cir. 2012) (citing *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007)). The plaintiff can satisfy his burden of proof by "show[ing] that his constitutional injury was caused 'by (1) the

3

enforcement of an express policy of the [City], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Wragg v. Vill. of Thornton,* 604 F.3d 464, 467-68 (7th Cir. 2010) (citing *Latuszkin v. City of Chi.,* 250 F.3d 502, 504 (7th Cir. 2001) (citing *McCormick v. City of Chi.,* 230 F.3d 319, 324 (7th Cir. 2000))). Here, Sigle bases his *Monell* claim on the second theory, alleging that the City had an unwritten policy of failing to adequately investigate and sustain allegations of the use of excessive force by its police officers, thereby encouraging and facilitating the alleged use of excessive force by the defendant officers in this case.

The failure-to-discipline or -supervise theory can support "a finding of municipal liability because a policy of condoning abuse may embolden a municipal employee and facilitate further abusive acts." *Quade v. Kaplan,* No. 06 C 01505, 2008 WL 905187, at *16 (N.D. Ill. Mar. 31, 2008) (quoting *Sassak v. City of Park Ridge,* 431 F. Supp. 2d 810, 816 (N.D. Ill. 2006)). However, to establish liability based on the City's failure to investigate, supervise, and discipline its officers, as alleged here, the plaintiff must show "deliberate indifference" on the part of the City. *See Sornberger v. City of Knoxville, Ill.,* 434 F.3d 1006, 1029-30 (7th Cir. 2006) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)); *see also Kindle v. City of Harvey,* No. 00 C 06886, 2002 WL 230779, at *4 (N.D. Ill. Feb. 15, 2002) ("A plaintiff relying on a failure to investigate theory must still meet the deliberate indifference standard adopted by the Supreme Court in [*Harris*]."). This is "a high threshold," and "[e]ven where significant evidence has been presented indicating flawed investigatory procedures courts still reject the failure to investigate theory where plaintiffs cannot demonstrate 'tacit authorization by city policymakers.'" *Kindle,* 2002 WL 230779, at *4 (citing *Harris,* 489 U.S. at 397); *see also Connick v. Thompson*, -- U.S. --, --, 131 S. Ct. 1350, 1360 (2011) ("Deliberate indifference is a stringent standard of fault,

4

requiring proof that a municipal actor disregarded a known or obvious consequence of his action." (internal citation omitted)). As the court explained in *Quade:*

> A custom of failing to discipline police officers can be shown to be deliberately indifferent if the need for further discipline is so obvious and disciplinary procedures so inadequate as to be likely to result in the violation of constitutional rights such that a jury could attribute to the policymakers a deliberate indifference to the need to discipline the police force.

2008 WL 905187, at *16 (quoting *Czajkowski v. City of Chi.,* 810 F. Supp. 1428, 1439 (N.D. Ill. 1992) (citing *Tapia v. City of Greenwood,* 965 F.2d 336, 338 (7th Cir. 1992))). Further, the plaintiff may prove deliberate indifference by showing that the City "fail[ed] to act in response to repeated complaints of constitutional violations by its officers." *Sornberger,* 434 F.3d at 1029–30 (citing *Harris,* 489 U.S. at 390 & n.10; *Robles v. City of Fort Wayne,* 113 F.3d 732, 735 (7th Cir. 1997) (indicating that failure to act after learning of pattern of violations would be deliberately indifferent)); *see also Jenkins v. Bartlett,* 487 F.3d 482, 492 (7th Cir. 2007) ("[W]e may find deliberate indifference when a repeated pattern of constitutional violations makes 'the need for further training…plainly obvious to the city policymakers.'" (citing *Harris,* 489 U.S. at 389 n.10)); *see also Richardson v. City of Chi.,* No. 08 C 04824, 2011 WL 862249, at *12 (N.D. Ill. Mar. 10, 2011) ("Continuing adherence to an approach…that policymakers 'know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their actions…necessary to trigger municipal liability." (citing *Bd. of Cnty. Comm'rs of Bryan Cnty., Oakland v. Brown,* 520 U.S. 397, 407 (1997))).

The City argues that Sigle cannot prevail on his *Monell* claim because he has failed to offer sufficient evidence to show that the City had a custom or practice that caused his alleged constitutional violation. Def. Mot., Dkt. 80 at 9. According to the City, the plaintiff's only relevant and admissible evidence consists of his allegations against the named defendant police officers with respect to this case—a single incident that, by its definition, falls short of a

5

"custom" or "practice." *Id.* 9-10. Furthermore, according to the City, since there is no record evidence that the City failed to investigate or discipline its police officers regarding the use of excessive force, *id.* at 10, Sigle cannot satisfy the "causation" element of his *Monell* claim even had he established such a custom or practice. *Id.* at 11.

When the City moved for summary judgment, there was no record evidence of a City custom, policy, or practice, aside from the plaintiff's allegations against the defendant police officers. While it is true that "evidence of a single violation of federal rights can trigger municipal liability if the violation was a 'highly predictable consequence' of the municipality's failure to act," *Woodward v. Corr. Med. Servs. of Ill., Inc.,* 368 F.3d 917, 929 (7th Cir. 2004) (quoting *Brown,* 520 U.S. at 409), that exception is cabined to a "narrow range of circumstances." *Connick,* 131 S. Ct. at 1361. A "hypothetical example" of an incident falling within that narrow range of circumstances would be "a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Id.* (citing *Harris,* 489 U.S. at 390 n.10). But the plaintiff has neither argued, nor offered proof, that his single-incident claim falls within that "narrow range."

As is more often the case, a single incident is insufficient to establish a "widespread custom or practice." *Thomas v. Cook Cnty. Sheriff's Dep't,* 604 F.3d 293, 303 (7th Cir. 2010). As the Seventh Circuit has explained, while there is no "bright-line rule[] defining a 'widespread custom or practice'…[and] there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability…'it must be more than one instance'…or even three." *Id.* (internal citations omitted). When a plaintiff is attempting to prove an unconstitutional policy "by showing a series of bad acts and inviting the court to infer from them that the policymaking

6

level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned" the misconduct, "proof of a single act of misconduct will not suffice; for it is the series that lays the premise of the system of inference." *Davis v. Carter,* 452 F.3d 686, 695 (7th Cir. 2006) (citing *Jackson v. Marion Cnty.,* 66 F.3d 151, 152 (7th Cir. 1995)). Accordingly, based on the record as it stood when the City filed its motion, the City would be entitled to summary judgment on the *Monell* claim. *See, e.g., Johnson v. Cook Cnty.,* No. 11 C 03203, 2011 WL 6009614, at *2 (N.D. Ill. Nov. 29, 2011) ("[The plaintiff's] *Monell* claim…fails because it only alleges a single instance of wrongdoing, but does not fall within the 'narrow range of circumstances' where the Supreme Court has allowed a 'single-incident' theory of *Monell* liability might be sufficient.").

That said, Sigle has attempted to produce several documents that purportedly establish the City's widespread custom of failing to investigate and discipline its officers in his response to summary judgment. Pl. Resp., Dkt. 94. The plaintiff argues that his evidence shows a pattern of similar violations by the named defendant officers, as well as the fact that the City was aware of this pattern, not only for the defendant officers, but the CPD as a whole. *Id.* at 6. First, Sigle offers the complaint register histories of Defendants Stegmiller, Lopez, Brandon, and Pozulp. *See* Pl. 56.1 Statement of Additional Facts, Dkt. 96 at ¶¶ 3-33, 43-53, 55-64, 66-68. The histories span complaints registered from 1999 to 2010. *See id.* In general, the complaint registers consist of allegations against each of the defendants for false arrest, unreasonable search and seizure, and the use of excessive force. *See id.* With a few exceptions, however, the charges against the defendant officers in these complaints were either "not sustained," determined to be "unfounded," or the officers were "exonerated," despite the evidence and witnesses to the alleged constitutional violations. *See id.* The plaintiff also points to several lawsuits filed against

the officers. *See id.* at ¶¶ 34-42, 54, 65, 68. Again, in each of the lawsuits, plaintiffs alleged that they had been falsely arrested or subjected to the use of excessive force by the defendant officers. *See id.* In general, these lawsuits either settled or are currently pending. *See id.*

The plaintiff also offers several public records to support his claim. For example, Sigle relies on annual reports pulled from the Chicago Police Department ("CPD") website that show that for the years between 2003 and 2007, less than one percent of civil rights violation complaints were sustained. *See id.* at ¶ 18. Sigle also produces an internal affairs memo listing the department-wide complaint history of officers with thirty or more complaints filed against them between 2000 and 2005. *Id.* at ¶ 70; *see id.,* Ex. T. In addition, the plaintiff offers a series of transcripts and documents generated by the City's Committee on Police and Fire, including: (1) transcripts from the Committee's January 20, 2000 hearings; (2) the January 20, 2000 Resolution of William Beavers, then-Chairman of the Committee; and (3) transcripts from the Committee's June 11, 2007 hearings. Pl. 56.1 Resp., Dkt. 98, Exs. U–W. Each of these documents deals with the City's attempt to address police misconduct and lack of effective investigatory procedures. Lastly, Sigle relies on an October 2012 report by the Chicago Justice Project ("CJP"). Pl. 56.1 Resp., Dkt. 98-11, Ex. Y. According to the report, the IPRA and its predecessor office, the Chicago Office of Professional Standards ("OPS"), had nearly identical rates of sustaining civilian complaints, with the IPRA's rate being only 0.28% higher than OPS's. Pl. 56.1 Statement of Additional Facts, Dkt. 96 at ¶ 75. The plaintiff contends that all of this evidence, in addition to the allegations against the named defendant officers, raises a genuine issue of material fact regarding whether the City had an unwritten policy of failing to investigate and discipline its police officers for using excessive force.

The City contends that, because Sigle failed to disclose this evidence during discovery and in response to the City's contention interrogatories, his evidence should be stricken pursuant to Federal Rule of Civil Procedure 37(c)(1).[1] Def. Mot. to Strike, Dkt. 102 at 1-2. Under Rule 26(e), a party must timely supplement or correct its interrogatory response if that party learns that the response is incomplete or incorrect and "the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). If a party fails to do so, Rule 37(c)(1) prohibits the party from relying on that information to supply evidence on a motion, unless the failure to supplement or amend the interrogatory was substantially justified or harmless. *See Dynegy Mktg. and Trade v. Multiut Corp.,* 648 F.3d 506, 514 (7th Cir. 2011) (citing Fed. R. Civ. P. 37(c)(1)). "Whether a failure to comply with [Rule 26(e)]…is substantially justified, harmless, or warrants sanctions is left to the broad discretion of the district court." *Id.* (citing *David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003)); Fed. R. Civ. P. 37(c)(1)(A)-(C) (listing sanctions courts may impose).

The City states that it served Sigle with contention interrogatories seeking the identification of evidence on which the plaintiff would rely in making his *Monell* claim. *See* Def. 56.1 Statement of Facts, Dkt. 79, Ex. C. On March 28, 2011, the plaintiff objected to the defendant's interrogatories as untimely, but indicated in response to each interrogatory that he had "[no evidence] at this time, investigation continues." *Id.* On May 11, 2011, the City sent the plaintiff a letter requesting specific responses to the City's interrogatories. *Id.*, Ex. E. After failing to receive a response, the City followed up on that request in a letter dated May 27, 2011.

---

[1] The City did not file a response to the plaintiff's 56.1 Statement of Additional Facts.

*Id.* Discovery then closed on December 31, 2011.[2] In a final letter sent to the plaintiff, dated June 20, 2012, the City indicated that it had not received amendments to its interrogatories and proposed that plaintiff withdraw his *Monell* claim against the City in view of his failure to identify the evidence that supported his claim. *Id.*

Having heard (so far as the record reflects) no response from the plaintiff, the City filed the instant motion for summary judgment and Local Rule 56.1 Statement of Facts, pursuant to a briefing schedule set by this Court. Def. Mot., Dkt. 78. In response to the City's Rule 56.1 Statement, the plaintiff admitted that "[n]o amendments or additional responses to the City's discovery were tendered prior to August 20, 2012 [the date the motion for summary judgment was filed and well after the close of discovery], despite specific requests that Plaintiff do so or withdraw his Section 1983 claim against the City." Def. 56.1 Statement of Facts, Dkt. 79 at ¶ 12; Pl. 56.1 Resp., Dkt. 95 at ¶ 12. The City argues that Sigle's failure to amend or supplement his interrogatory responses prevented the City from deposing additional witnesses or conducting follow-up discovery related to its defense. Therefore, according to the City, Sigle's failure to disclose his evidence was neither substantially justified nor harmless under Rule 37(c)(1), and, as a consequence, the plaintiff's evidence should be stricken.

The plaintiff's initial interrogatory responses were clearly incomplete. *See* Def. Mot., Dkt. 102, Ex. 2; *Villareal v. El Chile, Inc.*, 266 F.R.D. 207, 212 (N.D. Ill. 2010) ("An answer to an interrogatory that is incomplete or evasive when made is not an answer; it is a failure to answer." (citing Fed. R. Civ. P. 37(a)(4))). According to his discovery responses, Sigle had no

---

[2] Discovery was extended for limited purposes twice, first to February 12, 2012, *see* Order, Dkt. 41, and then to February 13, 2012. *See* Order, Dkt. 50; *see also* Reassignment Status Report, Dkt. 70, Ex. 1 at 2-3.

evidence to support his § 1983 claim against the City—an answer clearly at odds with his response to the summary judgment motion.

Sigle contends, however, that his "late amendments" to the interrogatory responses are justified and harmless because all of the documents upon which he relies are either public or were produced by the City during discovery. Moreover, Sigle states that the City "resisted producing" the complaint registers—implying, perhaps, that the City partly caused the delay at issue. Pl. Resp., Dkt 114 at 3. But the fact that the documents were either public or produced by the City neither justifies the plaintiff's failure to disclose what use he intended to make of that evidence in his interrogatory responses nor renders that deficiency harmless to the City's ability to conduct its own discovery and properly defend against the *Monell* claim.

The record indicates that any delay in obtaining the complaint registers was due to the plaintiff's inaction. Specifically, the plaintiff filed a motion to compel discovery of the complaint registers on February 8, 2012. Pl. Mot. to Compel, Dkt. 43. According to the parties' joint status report, the defendants made those complaint registers available to the plaintiff to copy, at the very latest, by June 22, 2012, the date the report was filed.[3] *See* Reassignment Status Report, Dkt.70, Ex. 1 at 2. However, the plaintiff did not copy those files until September 13, 2012, well after not only the close of discovery, but when the files were made available to the plaintiff and the City had filed its motion for summary judgment. *See* Dkt. 98, Ex. 10.

Further, aside from the complaint-register evidence, if substantially all of the plaintiff's other evidence is publicly available, as the plaintiff asserts, there is no good reason why the plaintiff could not have amended his interrogatories to disclose that evidence before the close of

---

[3] The plaintiff's motion to compel was denied as moot on September 6, 2012. *See* Order, Dkt. 82.

discovery.[4] *See, e.g., Civix-DDI, LLC v. Hotels.com, LP,* No. 05 C 06869, 2011 WL 181342, at *3 (N.D. Ill. Jan. 19, 2011) ("Defendants have not demonstrated that their untimely disclosure was justified. If the system were indeed available to the public since 1994, there is no good reason why [the plaintiff] could not have unearthed it earlier."). As such, the plaintiff has not shown that his failure to timely supplement or amend his responses to the City's contention interrogatories during discovery was justified. *See, e.g., id.* at *5 (delay of almost four months rendered the defendant's disclosure untimely (citing *Contech Storewater Solutions, Inc. v. Baysaver Techs., Inc.,* 534 F. Supp. 2d 616, 624 (D. Md. 2008))).

Nor is the plaintiff's delay harmless. The plaintiff's failure to disclose his evidence during discovery denied the City the opportunity to depose additional witnesses, conduct follow-up discovery and properly defend against the *Monell* claim. And the City is not required to guess which documents the plaintiff intends to use to support his claim, regardless of whether those documents are public or were produced by the City. *See, e.g. Rice ex rel. Rice v. Corr. Med. Servs.,* 675 F.3d 650, 669 (7th Cir. 2012) ("The defendants aren't required to guess which of the many individuals identified during discovery the [plaintiff] intends to use to support its claims— that is the sort of indirection the disclosure rules are designed to avoid." (quoting *Rice ex rel. Rice v. Corr. Med. Servs.,* No. 3:06-CV-697 RM, 2009 WL 1748059, at *8 (N.D. Ill. June 17, 2009))). Accordingly, the plaintiff's 56.1 Statement of Additional Facts is properly excluded from the record pursuant to Rule 37(c)(1) and should not be considered by the Court. *See, e.g., Civix-DDI, LLC,* 2011 WL 181342, at *4 (holding that defendants' untimely disclosure of

---

[4] In his response to the City's motion to strike, the plaintiff concedes that "the committee comments, resolutions and minutes from the City counsel [sic] meetings were also public documents previously attached to prior filings made to defeat similar Motions for Summary Judgment regarding *Monell* claims brought by other arrestees," and that "[s]uch documents were not discovered until legal research was conducted in Response to Defendant's Motion for Summary Judgment." Pl. Resp., Dkt. 114 at 4.

evidence almost a year after the close of fact discovery was not harmless (citing *Heidelberg Harris, Inc. v. Mitsubishi Heavy Indus., Ltd.,* No 95 C 00673, 1996 WL 680243, at *7 (N.D. Ill. Nov. 21, 1996) ("If a party is allowed to withhold the supplementation of its discovery responses until after fact discovery is closed…the opposing party is denied the opportunity to conduct discovery on the supplemented responses…Had [the plaintiff] been aware of [the defendants'] intention to raise [its] defense, it would have altered the way it conducted discovery."); *THK Am., Inc. v. MSK, Ltd.,* 917 F. Supp. 563, 568 (N.D. Ill. 1996) (precluding plaintiff from presenting evidence of two letters for several reasons, the "[m]ost important" being that the "documents were not disclosed in answers to…interrogatories"); *Abbott Labs. v. Syntron Bioresearch, Inc.,* No 98 C 02359, 2001 WL 34082555, at *10 (S.D. Cal. Aug. 24, 2011) ("The newly revealed prior art references were not mentioned in discovery and Abbott had no opportunity to conduct expert discovery on these prior acts."); *Luddington v. Ind. Bell Tel. Co.,* 796 F. Supp. 1550, 1579 (S.D. Ind. 1990), *aff'd,* 966 F.2d 225 (7th Cir. 1992) (noting that the court had "held that the plaintiff could not raise any claims regarding…four promotions because he had not informed the defendant that he was alleging discrimination…until after discovery was closed and over a month after the filing of the defendant's motion for summary judgment."))).

Even if the Court considered all of the plaintiff's untimely evidence, summary judgment would still be proper. Sigle argues that his proffered evidence shows that the City failed to investigate or discipline the defendant officers despite their history of misconduct. Pl. Resp., Dkt. 94 at 2. For instance, the plaintiff states that Defendant Stegmiller has a long history of misconduct similar to the plaintiff's allegations, but that, in each of those complaint registers, the allegations against the defendant were either determined to be "unsustained" or "unfounded." *Id.* Moreover, in one instance when an allegation was actually "sustained" against Stegmiller, for

13

failing to complete a "Daily Assignment Sheet," the defendant was never disciplined. *See id.* at 2-3. Stegmiller was also named in seven lawsuits with similar allegations of false arrest and the use of excessive force. *Id.* at 3. And like Stegmiller, the plaintiff argues that the City also failed to investigate and discipline the other named defendants based on the offered complaint registers and lawsuits. Sigle further argues that the CPD's own investigation records, former Chairman Beaver's official resolution recognizing that police officers "have ample reason to believe that they will not be held accountable, even in instances of egregious misconduct," and the fact that the sustain rates between the IPRA and OPS were nearly identical, all establish the City's "systematic failure to hold officers accountable for their misconduct." *Id.* at 4.

The plaintiff has not offered enough evidence, however, that would allow a reasonable jury to conclude that the City had a widespread custom or practice of deliberate indifference to the use of excessive force by its officers. "Allegations of isolated acts of unconstitutional conduct committed by non-policymakers generally fail to demonstrate a widespread practice or custom." *Richardson,* 2011 WL 862249 at *13 (citing *Sims v. Mulcahy,* 902 F.2d 524, 543-44 (7th Cir. 1990)). Further, evidence of statistics and complaint register allegations alone are insufficient to support a *Monell* claim. *See id.* (citing *Strauss v. City of Chi.,* 760 F.2d 765, 769 (7th Cir. 1985) (dismissing the plaintiff's *Monell* claim where the record was devoid of any evidence other than statistical summaries of complaints filed with the Police Department and stating that the number of complaints alone "does not indicate that the policies that [the plaintiff] alleges do in fact exist and did contribute to his injury")); *Bryant v. Whalen,* 759 F. Supp. 410, 412 (N.D. Ill. 1991) (granting summary judgment for the City because "the fact that a low percentage of cases are ultimately sustained cannot in and of itself be read to establish a policy of indifference.")). The plaintiff's evidence raises no issue as to whether the City was negligent in

investigating and disciplining its police officers, let alone deliberately indifferent to civilian complaints of excessive force. *See, e.g., Johnson v. City of Chi.,* No. 05 C 06545, 2009 WL 1657547, at *9 (N.D. Ill. June 9, 2009) ("Deliberate indifference requires more than a mere failure to eliminate a practice. It requires a deliberate choice to follow a course of action." (citing *Harris,* 489 U.S. at 389)).

It is not uncommon for police officers to be the subject of complaints by those whom they encounter in the course of their duties. Some complaints turn out to be well founded; others turn out to be fabrications. That these officers were the subjects of a number of complaints says nothing at all about whether any of those complaints had merit, and the plaintiff offers no evidence to suggest that they did. To the extent that any inference can be drawn from the fact that the complaints were not sustained by internal investigations, conducted by either the OPS or IPRA, it points in the direction of exoneration, not culpability; that many police investigations fail to substantiate allegations of officer misconduct may mean only that many allegations of officer misconduct have no merit. There is no basis to draw the contra-inference that the plaintiff urges, namely that the low number of misconduct allegations sustained by internal police investigations shows that the fix was in—at least absent evidence to impeach the integrity of the investigations, which Sigle has failed to provide.

That failure distinguishes this case from the handful of cases Sigle cites in which summary judgment on similar *Monell* claims was denied—namely, *Marcinczyk v. Plewa,* No. 09 C 1997, 2012 WL 1429448 (N.D. Ill. Apr. 25, 2012), *Obrycka v. City of Chi.,* No. 07 C 02372, 2012 WL 601810 (N.D. Ill. Feb. 23, 2012), *Johnson,* 2009 WL 1657547, *Arias v. Allegretti,* No. 05 C 05940, 2008 WL 191185 (N.D. Ill. Jan. 22, 2008), *Garcia v. City of Chi.,* No. 01 C 08945, 2003 WL 1715621 (N.D. Ill. Mar. 20, 2003), *Kindle,* 2002 WL 230779, and *Robinson v. City of*

15

*Harvey,* No. 99 C 3696, 2001 WL 138901 (N.D. Ill. Feb. 16, 2001). In those cases, the plaintiffs offered the testimony of investigators and expert witnesses who could opine on the integrity of the defendant municipality's complaint investigation and discipline procedures. *See, e.g., Obrycka,* 2012 WL 601810, at *7 (summary judgment denied where plaintiff offered testimony of two experts, one opining on the existence of a code of silence and deficient administrative investigations and disciplinary procedures within the CPD and that the CPD's sustained rates for force-related complaints were statistically significantly lower than the national average over the eight years prior to 2007, and record evidence that officers helped protect the defendant during their investigation of the plaintiff's complaint); *Garcia,* 2003 WL 1715621, at *7 (summary judgment denied where the plaintiff offered testimony of an Internal Affairs Division investigator, evidence that different standards were applied to investigations of force-related complaints by police officers in order to protect police officers, an expert opinion opining that OPS investigations were not conducted to determine the truth but to protect police officers, and record evidence that officers involved in investigating the plaintiff's allegations were protecting the defendant); *Kindle,* 2002 WL 230779, at *3-4 (summary judgment denied where plaintiff offered evidence that the municipality's police provisions did not address the proper use of non-deadly force, that there were no written guidelines for determining how a civilian complaint was handled, that patrol sergeants had discretion to screen complaints referred to Internal Affairs, and the testimony of an IAD investigator); *Robinson,* 2001 WL 138901, at *7 (summary judgment denied where plaintiff offered record evidence that complaints of excessive force were often unreviewed and undocumented and an expert report that concluded that the municipality had systemic deficiencies in its administrative investigations of use of force and citizen complaints).

Here, by contrast, Sigle offers various complaint registers, lawsuits, and public documents as evidence, but has not proffered any expert testimony opining on the integrity of the complaint register investigations, nor has he adduced deposition testimony of OPS or IPRA investigators familiar with the City's investigation and discipline process. Without more, the plaintiff cannot show that there was an obvious need for further discipline, or that the investigatory and disciplinary procedures in place were plainly inadequate. Without such evidence, a jury could not reasonably conclude that the City had a widespread policy of indifference based only on the defendant officer's complaint register histories, civil rights lawsuits, and statistics regarding the rate of sustained complaints. *See, e.g., Quade,* 2008 WL 905187 (deliberate indifference exists when the "need for further discipline is so obvious and disciplinary procedures so inadequate as to be likely to result in the violation of constitutional rights" (citing *Czajkowski,* 965 F.2d at 1439) (citing *Tapia,* 965 F.2d at 338)). Accordingly, the City's motion for summary judgment on the *Monell* claim is granted.

As a final matter, the City seeks to dismiss the claims against the unnamed officers from this case. The plaintiff resists dismissal because he alleges a failure to intervene claim against the named defendant police officers. According to the plaintiff, there is a possibility that unnamed officers falsely arrested him and the named officers failed to intervene. Pl. Resp., Dkt. 94 at 14. Even if true, however, this does not justify keeping the unnamed officers in this case. As the City points out, the named officers can be held liable for failing to intervene even if the plaintiff cannot identify the unnamed officers responsible for the arrest. *See Sanchez v. City of Chi.*, 700 F.3d 919, 926 (7th Cir. 2012) (stating that a defendant officer may be liable for his failure to intervene even if the plaintiff cannot identify the officer who violated his constitutional rights). A failure to intervene claim is a claim against the named defendants, not the unidentified officers.

If the plaintiff wanted to assert a claim against those unidentified officers, he should have amended the complaint to identify them as individuals. Because the plaintiff had ample time to identify those officers and amend his complaint, his failure to do so warrants dismissal. *See Strauss,* 760 F.2d at 765 (dismissing unidentified defendants who were never served); *Horton v. City of Chi.*, No. 10 C 03968, 2012 WL 379770, at *2 (N.D. Ill. Feb. 3, 2012) (dismissing unnamed officers because plaintiff did not discover and name them individually). Accordingly, any claims against the unidentified officers are dismissed with prejudice.

\*   \*   \*

Sigle failed to produce sufficient evidence to allow a reasonable jury to conclude that the City has a widespread practice of inadequately investigating and disciplining its police officers. In addition, despite ample time to identify any unnamed defendant officers, the plaintiff failed to do so. Accordingly, the Court grants summary judgment on the *Monell* claim and dismisses the unnamed officers with prejudice.

Entered: April 25, 2013

_____
John J. Tharp, Jr.
United States District Judge